## STIPULATION OF SETTLEMENT AND RELEASE OF CLAIMS

Subject to final approval by the Court, this Stipulation of Settlement and Release of Claims ("Agreement") is made and entered into in the following putative class action suits pending in United States District Court, Central District of California:

(a) *Jorge Jaime, individually and on behalf of all other similarly situated current and former employees of Standard Parking Corporation,* Case Number CV08-04407 AHM (RZx),

(b) *Luis A. Aguirre, individually, and on behalf of all other similarly situated current and former employees of Standard Parking Corporation, vs. Standard Parking Corporation,* Case No. CV08-07278 GAF (RCx), and

(c) *Victor Gonzalez, individually, and on behalf of all other similarly situated current and former employees of Standard Parking Corporation, vs. Standard Parking Corporation,* Case No. CV08-07004 FMC (JWJx).

The three actions referenced above were consolidated in the United States District Court, Central District of California, with each action retaining its own individual case number. After the cases were consolidated, the Plaintiffs filed a Consolidated Amended Complaint. For purposes of this Agreement, the three lawsuits and the Consolidated Amended Complaint (and the Second Amended Consolidated Complaint referenced in paragraph 1.1 below), will be collectively referred to as "the Lawsuits."

1. **Lawsuits.** In the Lawsuits, Plaintiffs Jorge Jaime, Victor Gonzalez and Luis A. Aguirre, individually and on behalf of all other similarly situated current and former employees of Standard Parking Corporation ("Plaintiffs") assert the following claims: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Compensation; (4) Failure to Pay All Wages Due to Discharged or Quitting Employees; (5) Failure to Pay Minimum Wages; (6) Failure to Maintain Required Records; (7) Civil Penalties (Labor Code §2699) and (8) Unfair Business Practices.

   1.1. **Second Amended Consolidated Complaint.** Plaintiffs agree that for purposes of facilitating a comprehensive settlement they will file a Second Amended Consolidated Complaint that will add claims for unpaid wages under both the Fair Labor Standard Act ("FSLA") and under California law. Defendant agrees to stipulate to the filing of the Second Amended Consolidated Complaint, provided that the language therein is acceptable to Defendant.

2. **Stipulation to Classes For Settlement Only.** It is the position of Standard Parking Corporation ("Defendant") that if the Lawsuits were to continue to be litigated, class certification would be inappropriate and unlikely because individual issues predominate. For settlement purposes only, Defendant will stipulate that the following two classes may be certified:

   2.1. **Former Employee Class:** All persons employed in California by Standard Parking Corporation at any time, in any position, during the period from April 14, 2004

1

through December 28, 2009, whose employment terminated on or before December 28, 2009; and

      2.2. **Current Employee Class:** All persons employed by Standard Parking Corporation in California at any time during the period from April 14, 2004 through December 28, 2009 as a valet, attendant, cashier, or in a similar position whose duties involve[d] the parking/retrieval of cars or collection of parking fees, and who are currently employed by Standard Parking Corporation, or whose employment ended after December 28, 2009.

      2.3. The parties agree that certification for settlement purposes under the lenient standard applied to settlements is in no way an admission by Defendant that class certification is proper under the more stringent standard applied for litigation purposes and that evidence of this limited stipulation for settlement purposes only will not be deemed admissible in this or any other proceeding. The Former Employee Class and Current Employee Class may be sometimes collectively referred to herein as the "Settlement Class."

    3. **Settlement Amounts**

      3.1 **Maximum Settlement Amount.** The claims of all Settlement Class members are settled on a claims-made basis for a maximum of Four Million Two Hundred Thousand Dollars ($4,200,000) ("the Maximum Settlement Amount" or "MSA"). This sum is the maximum amount that shall be paid under the settlement, and includes all claims by Settlement Class members (including employer tax contribution obligations and any obligation to contribute to a benefit or retirement plan resulting from the settlement), attorneys' fees, costs and expenses directly related to the Lawsuits (which includes, without limitation, all fees and costs incurred in documenting the settlement, securing court approval of the settlement, administration of the settlement, and obtaining a dismissal of the action with prejudice), enhancement payments to the class representatives, and payment to the Labor Workforce Development Agency ("LWDA") for penalties pursuant to the Private Attorneys General Act ("PAGA").

      3.2 **Guaranteed Minimum Payment.** Defendant guarantees that, in addition to payment of court-approved attorneys' fees and costs, a minimum of One Million One Hundred Thousand Dollars ($1,100,000) shall be paid by Defendant under this Agreement (the "Guaranteed Minimum"). In the event that the payments required under this Agreement for (1) valid claims by Settlement Class members, (2) any required employer contributions for payroll taxes for payments made to Settlement Class members; (3) the PAGA payment made pursuant to paragraph five below; (4) the class representative enhancements made pursuant to paragraph seven below; and (5) the costs of a mutually chosen neutral third-party claims administrator (the "Administrator") pursuant to paragraph nine below, do not together equal at least One Million One Hundred Thousand Dollars ($1,100,000), the difference between One Million One Hundred Thousand Dollars ($1,100,000) and the sum of the payments delineated in items 1-5 in this paragraph shall be paid to charity. The parties agree that any such payment to charity shall be made to the American Red Cross and designated for Haiti relief. If the sum of the payments for the aforementioned items 1-5 in this paragraph equals or exceeds the Guaranteed Minimum, no payment to the Red Cross shall be made. (By way of example, if valid claims received from Settlement Class members total $700,000, and the sum of items 2-5 enumerated in this

2

8781160v.4

paragraph equals $150,000, Defendant would be required to pay $250,000 to the American Red Cross. Another example is as follows: if valid claims received from Settlement Class members total $900,000, and the sum of items 2-5 equals $200,000, no payment to charity would be required.)

4. **Attorneys' Fees and Costs.** Defendant and its counsel will not object to, and Plaintiffs' counsel agrees to submit, an application for an award of reasonable attorneys' fees and costs incurred by Plaintiffs' counsel of not more than One Million One Hundred Thousand Dollars ($1,100,000.) Plaintiffs' counsel will be issued an IRS Form 1099 for whatever amount the court awards as attorneys' fees and costs. Payment for Court-approved attorneys' fees and costs will be made by the Administrator within thirty (30) business days after the "effective date" of the final approval of the settlement as defined in paragraph 9.4, and shall be issued to Plaintiffs' counsel by check(s) or wire transfer as directed by Plaintiffs' counsel. All Plaintiffs' counsel shall be in agreement regarding the payment method and the amount payable to each law firm before any payment is required hereunder, and each of Plaintiffs' law firms shall notify the Administrator of their agreement in this regard as a prerequisite for payment. Plaintiffs' counsel shall also provide IRS Form W-9s as a prerequisite for receipt of payments under this paragraph.

5. **PAGA.** The parties agree to allocate the sum of Thirty-Three Thousand Three Hundred Thirty-Three Dollars ($33,333) from the MSA to settlement of the claims for PAGA penalties asserted in the Lawsuits. The parties agree that, given the uncertainty of litigation, and the issues and difficulty involved in obtaining class certification, this allocation is reasonable under the circumstances. Within ten (10) days of execution of a settlement agreement by all parties, Plaintiffs' attorneys will deliver a letter to the California Labor Work Force Development Agency ("LWDA") advising that the Lawsuits have been settled and further advising that, within the period specified for payment after final approval of the settlement by the Court, payment of $25,000 (75% of the settlement amount allocated to PAGA penalties) shall be paid to the LWDA by the Administrator on behalf of Defendant. The Administrator shall make this payment to the LWDA within thirty (30) business days after the "effective date" of final approval of the settlement as defined in paragraph 9.4.

6. **Calculation of Payments to Settlement Class Members.** After deducting for the amount of attorneys' fees and costs, the cost of the Administrator, the class representatives' enhancements, the PAGA payments to the LWDA, any payments in satisfaction of obligations to make contributions to a benefit or retirement plan, and the employer's portion of payroll taxes on claims made by Settlement Class members, the remainder of the MSA (hereinafter the "Maximum Remainder Amount" or "MRA") will be allocated for payments to each eligible class member who submits a valid claim. Once the memorialized Agreement and other settlement documents are finally approved by the Court, the payment to each Settlement Class member who submits a claim will be calculated in accord with the provisions as set forth below:

6.1. *Former Employee Class*: Eighty-One percent (81%) of the MRA shall be allocated for payment of claims to the Former Employee Class. Each member of the Former Employee Class shall be entitled to an equal share of this portion of the MRA. The amount allocated to each Former Employee Class member shall be determined by the following calculation: MRA times 81% divided by total number of Former Employee Class members. The amount allocated to each Former Employee Class member shall be paid on a claims-made basis.

3

8781160v.4

Defendant shall provide the Administrator with a list of names and last-known addresses of all Former Employee Class members.

6.2. *Current Employee Class*: Nineteen percent (19%) of the MRA shall be allocated for payment to the Current Employee Class. Each member of the Current Employee Class shall be entitled to an equal share of this portion of the MRA. The amount allocated to each Current Employee Class member shall be determined by the following calculation: MRA times 19% divided by total number of Current Employee Class members. The amount allocated to each Current Employee Class member shall be paid on a claims-made basis. Defendant shall provide the Administrator with a list of names and last-known addresses of all Current Employee Class members.

7. **Class Representative Enhancement.** The class representatives, Jorge Jaime, Victor Gonzalez and Luis A. Aguirre ("Class Representatives"), if approved by the court, will each receive, in addition to whatever payment they otherwise are entitled to as Settlement Class members, an enhancement of Ten Thousand Dollars, ($10,000), which will be paid from the MSA. The class representatives will be issued an IRS Form 1099 for their enhancement. Each Class Representative's right to receive this enhancement is contingent on his acceptance of the release and other terms and conditions of paragraph 8.2 below, without revocation. Class Representatives agree that they shall not opt out of the settlement, and that they will opt in to the FLSA settlement. The Administrator shall make the Court-approved enhancement payments within thirty (30) business days after the "effective date" of final approval of the settlement as defined in paragraph 9.4.

8. **Releases.**

8.1 **Class Member Release.** This settlement resolves all claims of the Settlement Class members, arising out of or related to the claims and facts asserted in the Lawsuits, up to and through December 28, 2009, including those that could have been but were not asserted. Each member of the Settlement Class, regardless of whether that member submits a timely claim, will release Defendant, and any parent, subsidiary, predecessor or successor, and all shareholders, agents, employees, officers, directors and attorneys thereof, and individuals and businesses that retain or have retained Defendant to provide parking-related services (the "Releasees"), from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action which are asserted in the Lawsuits or which relate to the claims set forth in the Lawsuits, including, without limitation, claims for the nonpayment of or failure to pay wages, including, but not limited to, failure to pay minimum wages, failure to pay overtime, claims and penalties under the California Labor Code (including, without limitation, penalties under Labor Code sections 203, 226, 226.7, 558, and 2699 and under Wage Order 9, or any other applicable Wage Order of the Industrial Welfare Commission), claims for failure to reimburse expenses required under California Labor Code Section 2802, and any other claims alleged or which could have been alleged in the Lawsuits based on the allegations in the Lawsuits, including without limitation, all claims arising under ERISA, the California Labor Code or Business & Professions Code (including Section 17200), or the Wage Orders of the California Industrial Welfare Commission; claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, whether known or unknown, up to and through December 28, 2009 and,

4

8781160v.4

for Settlement Class members who opt into the FLSA settlement, a release of all claims under the FLSA (collectively the "Released Claims"). The Released Claims includes a waiver of California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The parties' intent in entering into this settlement is to release Defendant from any and all claims, and preclude Defendant from owing any further monies (beyond the MSA) to the Settlement Class members based upon the claims made in the Lawsuits.

**8.2  Additional Class Representative Individual Release of Claims and No Re-Employment.** In addition to the release provided in paragraph 8.1 above, Class Representatives each do hereby, for themselves and for their heirs, representatives, attorneys, executors, administrators, successors, and assigns – release, acquit, and forever discharge Defendant, and all owners, affiliates, related companies, subsidiaries, divisions, parents, and the members, managers, investors, shareholders, officers, directors, partners, servants, agents, employees, representatives, attorneys, insurers, bankruptcy trusts, past, present, and future of Defendant, and all persons acting under, by, through, or in concert with any of them, and each of them, including, but not limited to, all individuals and businesses that have retain or have retained Defendant to provide parking-related services, from any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time to the date of execution of this Agreement, including, but not limited, to any claims or causes of action arising out of or in any way relating to any of Plaintiffs' employment relationships with Defendant.

Each Class Representative agrees that this release of claims includes, but is not limited to, claims for breach of any implied or express contract or covenant; claims for promissory estoppel; claims of entitlement to any pay; claims for failure to reimburse expenses, claims of wrongful denial of insurance and employee benefits; claims for wrongful termination, public policy violations, defamation, invasion of privacy, emotional distress or other common law or tort matters; claims of harassment, retaliation, or discrimination under federal, state, or local law; claims based on any federal, state, or other governmental statute, regulation or ordinance, including, without limitation, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment & Housing Act, the California Family Rights Act, the California Labor Code, the Fair Labor Standards Act, and the Employee Retirement Income Security Act.

For the purpose of implementing a full and complete release, each Class Representative expressly acknowledges that the release he gives in this Agreement is intended to include in its

8781160v.4

effect, without limitation, claims that he did not know or suspect to exist in his favor at the time of the execution of this Agreement, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of this matter, and that the consideration given under the Agreement was also for the release of those claims and contemplates the extinguishment of any such unknown claims. Each Class Representative expressly waives the provisions of Section 1542 of the Civil Code of California (and all similar laws of other jurisdictions), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

As further consideration for the promises in paragraph 7 of the Agreement, each Class Representative waives any claim of reinstatement with Defendant, or any of its subsidiaries, parents, successors, or affiliated companies. Class Representatives each agree that they shall not knowingly apply for work as an employee or independent contractor with Defendant, or any of Defendant's subsidiaries, parents, successors, or affiliated companies. Class Representatives further agree that any application to be an employee or independent contractor that Class Representatives make to Defendant, or any of Defendant's subsidiaries, parents, or affiliated companies, may be rejected by the company or entity to which application is made. Class Representatives understand and acknowledge that neither Defendant, nor any related entity, has an obligation to re-hire them or retain them as either an employee or independent contractor, and that any such refusal to re-hire them or retain them will not subject Defendant, or a related entity, to liability on any grounds.

Class Representatives shall have 21 days in which to consider the individual releases referenced in the language in paragraph 8.2 above. For a period of and including 7 days after the execution of this Agreement, Class Representatives may revoke the release given in paragraph 8.2. Accordingly, the individual releases referenced in paragraph 8.2 shall not become effective or enforceable until this 7-day revocation period has expired. Any Class Representative who revokes this release will have no right to the payment set forth in paragraph 7. Defendant hereby advises Class Representatives to consult with an attorney before signing this Agreement. In order to revoke as specified herein, Class Representatives must deliver such revocation in writing, and within the 7-day revocation period, either by facsimile or personal delivery to counsel of record for the Defendant in the Lawsuits.

Class Representatives understand and agree that they: a) have had a reasonable time within which to consider this Agreement before executing it; b) hereby are advised by Defendant in writing to consult with their attorneys before executing this Agreement; c) have discussed this Agreement with their attorneys; d) have carefully read and fully understand all of the provisions of this Agreement, including the fact that this Agreement contains a release of claims, (including but not limited to claims arising under the Age Discrimination in Employment Act); e) knowingly and voluntarily agree to all of the terms set forth in this Agreement; and f) knowingly and voluntarily intend to be legally bound by the same.

8781160v.4

9.  **Claims Procedure.**

   9.1.  **Administrator.** The parties have chosen _____ to act as Administrator. The Administrator has agreed to perform all necessary class administration duties for a fee estimated not to exceed $_____. All costs of the Administrator associated with the administration of the settlement shall be paid from the MSA. All notices and mailing sent by the administrator will be by U.S. first class mail.

   9.2.  **Obligations Following Preliminary Approval.** Each Settlement Class member may submit a claim. The settlement will be on a claims-made basis. No fluid recovery fund will be created or maintained. Each Settlement Class member will be advised of the settlement through a notice, to be sent by mail to the Settlement Class member by the Administrator. Within 30 days following preliminary approval of this settlement, Defendant shall provide the Administrator, and counsel for Plaintiffs, with the names, telephone numbers and last known addresses of the Settlement Class members. Within 21 days following receipt of the names, telephone numbers and last known addresses, the Administrator shall send the notice to the Settlement Class members in English and in Spanish in the form attached hereto as Exhibit A. Included with the notice will be a Claim Form/FSLA Opt-In Form in the form attached hereto as Exhibit B, and a Request for Exclusion Form in the form attached hereto as Exhibit C. Address information for any notices returned as non-deliverable shall be checked by a skip trace using the United States Postal Service National Change of Address ("NCOA") database. If there is a different address in the NCAO, a new notice will be mailed to the address reflected in the NCAO. Settlement Class members who have not responded within 30 days will be sent a reminder postcard in English and in Spanish. In order to be entitled to a payment, a Settlement Class member shall, within 60 days of the initial mailing of notice by the Administrator: (1) fill out and submit a timely claim form; (2) fill out an opt-in form regarding FLSA claims; and (3) not opt-out the settlement (collectively "eligibility requirements"). The claim form shall state the estimated payment for which the class member is eligible. Claim forms will be submitted by Settlement Class members to the Administrator who will certify jointly to Plaintiffs' counsel and Defendant's counsel what claims were timely filed.

   9.3.  **Funding of Settlement.** Within twenty (20) business days after final approval of this settlement, Defendant shall distribute to the Administrator funds to cover payments to be made to Settlement Class members who meet the eligibility requirements set forth in paragraph 9.2 above, and funds to cover Court-approved attorneys' fees and costs, Court-approved class member enhancements, and Court-approved administration costs.

   9.4.  **Payment Procedure.** Within thirty (30) business days after the "effective date" of final approval of the settlement, the Administrator shall mail all settlement checks to the Settlement Class members who meet the eligibility requirements, to the Charitable organization set forth in paragraph 3.2 (to the extent required by this Agreement), and shall also mail the checks for the Court-approved enhancement payments, Court-approved attorneys' fees and costs, and the PAGA payment to the LWDA. The effective date shall be the date of final approval if no objections are filed to the settlement. If objections are filed and overruled, and no appeal is taken of the final approval order, then the effective date of final approval shall be sixty-five (65) days after the Court enters final approval. If an appeal is taken from the Court's overruling of objections to the settlement, then the effective date of final approval shall be twenty (20) days

after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final. No money will be distributed unless and until the effective date of final approval occurs.

9.5. **Unclaimed Checks**. If a Settlement Class member fails to cash his or her settlement check within sixty (60) days of mailing, the check shall expire and the unclaimed amount will remain the property of Defendant.

10. **Opt-Outs.** Settlement Class members will have an opportunity to opt out of this settlement. If more than five percent (5%) of the Settlement Class members opt-out, Defendant, at its sole option may, but is not required to, withdraw from this Agreement. Defendant shall notify Plaintiffs' attorneys of its intent to exercise its rights under this paragraph within ten (10) days after receipt of notice from the Administrator that more than five percent (5%) of the Settlement Class members opted out of the settlement.

11. **Resolution Of Disputes Relating To Amount Of Payment To Class Settlement Members**. Settlement Class members shall be entitled to dispute in writing the claim form. Disputes can only be made as to whether the Settlement Class member is a member of the Former Employee Class or the Current Employee Class. Settlement Class members are not entitled to dispute the calculations or numbers or other aspects of the determination of the amount of the specific payment for which he or she is eligible by virtue of his or her membership in the Former Employee Class or the Current Employee Class, or for any other Settlement Class member, or for the class in general.

Notice of any dispute permitted by this paragraph must specify the grounds for the dispute and be mailed by U.S. first class mail to the Administrator, postmarked no later than the date to submit a timely claim pursuant to paragraph 9.2. Upon receipt of notice of any such dispute, the Administrator shall promptly serve all Plaintiffs' and Defendant's counsel with a copy of the notice of dispute and any accompanying papers. No such notice of dispute shall be effective or considered for any purpose unless it is timely mailed by U.S. first class mail to the Administrator, and received by the Administrator within five (5) business days of the postmark. Defendant shall have ten (10) days after the receipt of a notice of dispute to provide information to the Administrator regarding the Settlement Class member initiating the dispute. All disputes by the Settlement Class members shall be determined in a single, final, binding, non- appealable decision by the Administrator with the understanding that the only such objections permitted are those set forth under this paragraph 11. The Administrator will review documentation and may talk to the Settlement Class member initiating the dispute and a representative of Defendant in making its non-appealable decision with respect to the dispute. The burden shall fall on the Settlement Class member initiating the dispute to produce information and/or documents affirmatively rebutting the information provided by Defendant. There shall be no discovery conducted under this Agreement. The Administrator shall be neutral and unbiased. The Administrator shall render a decision within 30 days after receipt of the mailing initiating the dispute. Claims that Defendant believes are fraudulent or contain inaccurate information will also be decided in this manner.

The fees and costs charged by the Administrator (if any) under this dispute procedure are costs of administering the settlement and shall be approved by the court, and applied towards the

8781160v.4

Guaranteed Minimum payment set forth in paragraph 3.2, and considered in calculating the MRA pursuant to paragraph 6.

12.     **IRS Withholdings.** The parties agree that the majority of the amounts paid to the Former Employee Class members are in settlement of claims for penalties under Labor Code section 203 and shall not be subject to withholding. The parties agree that sixty-five (65) percent of the settlement amount payable to Former Employee Class members pursuant to paragraph 6.1 represents interest and penalties, and claimants will be issued an IRS Form 1099 for that portion of their payments. The parties agree that thirty (30) percent of all payments to the Former Employee Class members pursuant to paragraph 6.1 will be treated as wages subject to W-2 reporting and, therefore, normal payroll taxes and withholdings will be deducted from that portion pursuant to state and federal law and further agree that all required employer payroll taxes will be paid from the MSA. Five percent (5%) of the settlement amount payable to Former Employee Class members pursuant to paragraph 6.1 shall be allocated to payment for reimbursement of business travel expenses and shall not be subject to taxes and will not be reported as income on IRS Form 1099.

The parties recognize that a portion of the settlement amount to be paid to the Current Employee Class members is for wages. The parties agree that fifty (50) percent of all payments to the Current Employee Class members pursuant to paragraph 6.2 will be treated as wages subject to W-2 reporting and, therefore, normal payroll taxes and withholdings will be deducted from that portion pursuant to state and federal law and further agree that all required employer withholdings will be paid from the MSA. Five percent of the settlement amount payable to Current Employee Class members pursuant to paragraph 6.2 shall be allocated to payment for reimbursement of business travel expense and shall not be subject to taxes and will not be reported as income on an IRS Form 1099. The other forty-five (45) percent of the settlement amount payable to Current Employee Class members pursuant to paragraph 6.2 represents interest and penalties, and claimants will be issued an IRS Form 1099 for that portion of their payments.

Notwithstanding the treatment of the settlement amounts above, none of the payments called for by this Agreement, including the wage portion, are intended to be treated as earnings or wages for any purpose of any of Defendant's benefit or retirement plans, unless required by such benefit or retirement plan or a collective bargaining agreement. The parties agree that any required employer payroll taxes shall be paid from the MSA and shall be calculated and deducted from the MSA and count toward the Guaranteed Minimum payment set forth in paragraph 3.2. The parties understand and agree that Defendant is neither providing tax or legal advice, nor making representations regarding tax obligations or consequences, if any, related to this Agreement, and that Settlement Class members will assume any such tax obligations or consequences that may arise from this Agreement, and that Settlement Class members shall not seek any indemnification from Defendant in this regard. The parties agree that, in the event that any taxing body determines that additional taxes are due from any Settlement Class member, such Settlement Class member assumes all responsibility for the payment of any such taxes and agrees to indemnify, defend and hold Defendant harmless for the payment of such taxes, any failure to withhold, and any penalties associated therewith.

13. **No Common Fund.** The parties agree that as there is not an express common fund to be created from which claims will be paid. The parties represent that the MSA is a settlement amount that takes into account the probability that some Settlement Class members for various reasons will not file claims. The parties recognize that the settlement amount would have been less if all of it had to be paid. The parties will work together expeditiously to obtain preliminary and final approval of this settlement. However, class counsel may argue that the total settlement is the total benefit to the class and may argue this as a basis for any fee award.

14. **No Press Releases.** The parties and their counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry, or have any communication with the press about this case and/or the fact, amount or terms of the settlement. Until the Court grants preliminary approval of the settlement, Plaintiffs and their attorneys agree that they will keep confidential the fact, amount and terms of the settlement except as to their immediate families, attorneys and tax advisors. Nothing in this Agreement is intended to prohibit Defendant from reporting the terms of this Agreement to its shareholders, disclosing the terms of this Agreement in any SEC or other public filing, or otherwise prohibiting Defendant in any way from disclosing the terms of this Agreement as it deems proper as part of the operation of its business.

15. **No Admission Of Liability.** The parties agree that this Agreement shall not constitute an admission on behalf of Defendant of any form of liability or the accuracy of any fact or allegation.

16. **No Appeals.** The parties agree to waive appeals and to stipulate to class certification for purposes of implementing this settlement only; provided, however, Plaintiffs can appeal any reduction in the attorneys' fee award.

17. **Court Approval.** Plaintiffs shall apply to the Court for approval of this Agreement. The amounts of Plaintiffs' attorneys' fees and costs, settlement administration costs and class representative enhancements shall be determined by the Court, and this determination shall be final and binding. The parties agree that the Court's approval or denial of any amount requested for Plaintiffs' attorneys' fees and costs, settlement administration costs and class representative enhancements are not conditions of this Agreement, and are to be considered by the Court separate and apart from the fairness, reasonableness, and adequacy of the settlement. Any order or proceeding relating to an application for Plaintiffs' attorneys' fees and costs, settlement administration costs or class representative enhancements shall not operate to terminate or cancel this Agreement.

18. **Binding Effect.** The parties intend that this Agreement shall be fully enforceable and binding upon all parties, and that it shall be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding the mediation confidentiality provisions that otherwise might apply under federal or state law.

19. **Dismissal of Lawsuits.** The parties agree that, upon final approval of the settlement, Jaime, Gonzalez and Aguirre will cause Standard Parking Corporation to be dismissed from the Lawsuit with prejudice and/or the Court shall dismiss Standard Parking Corporation with prejudice. Following final approval of this settlement, the parties will submit a

8781160v.4

proposed final order to the Court dismissing the Lawsuits with prejudice and permanently barring all members of the Settlement Class from prosecuting all claims released pursuant to paragraph 8.1 herein. However, this dismissal shall only have *res judicata*, collateral estoppel, or other preclusive effect against Plaintiffs and the Settlement Class members who do not timely opt-out, and with respect to FLSA claims only, Settlement Class members who opt-in.

20. **No Prior Assignment.** The parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

21. **Construction.** The parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms length negotiations between the parties, and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Agreement.

22. **Captions And Interpretations.** Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

23. **Modification.** This Agreement may not be changed, altered, or modified, except in writing and signed by the parties hereto, and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto.

24. **Integration Clause.** This Agreement contains the entire agreement between the parties, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

25. **Binding On Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

26. **Signatories.** It is agreed that because the large number of Settlement Class members, it is impossible or impractical to have each Settlement Class member execute this Agreement. The Notice, Exhibit "A" hereto, will advise all Settlement Class members of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each member of the Settlement Class.

27. **Counterparts.** This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

8781160v.4

Dated: March _____, 2010

FOR PLAINTIFF JORGE JAIME AND THE CLASS

_____
Matthew J. Matern

Dated: March _____, 2010

JORGE JAIME

_____
Jorge Jaime

Dated: March _____, 2010

FOR PLAINTIFF VICTOR GONZALEZ AND THE CLASS

_____
James Pazos

Dated: March _____, 2010

VICTOR GONZALEZ

_____
Victor Gonzalez

Dated: March _____, 2010

FOR PLAINTIFF LUIS A. AGUIRRE AND THE CLASS

_____
Dennis F. Moss

Dated: March _____, 2010

LUIS A. AGUIRRE

_____
Luis A. Aguirre

Dated: March 8, 2010

FOR DEFENDANT STANDARD PARKING CORPORATION

_____
Lorraine H. O'Hara

Dated: March 9, 2010

FOR STANDARD PARKING CORPORATION

_____
Gerard M. Klaisle, Executive Vice President/
Chief Human Resource Officer

Dated: March  8 , 2010

FOR PLAINTIFF JORGE JAIME AND
THE CLASS

*/s/ Thomas S. Campbell*
Matthew J. Matern
Thomas S. Campbell

Dated: March  8 , 2010

JORGE JAIME

*/s/ Jorge Jaime*
Jorge Jaime


Dated: March ____, 2010

FOR PLAINTIFF VICTOR GONZALEZ
AND THE CLASS

_____
James Pazos

Dated: March ____, 2010

VICTOR GONZALEZ

_____
Victor Gonzalez


Dated: March ____, 2010

FOR PLAINTIFF LUIS A. AGUIRRE AND
THE CLASS

_____
Dennis F. Moss

Dated: March ____, 2010

LUIS A. AGUIRRE

_____
Luis A. Aguirre


Dated: March ____, 2010

FOR DEFENDANT STANDARD
PARKING CORPORATION

_____
Lorraine H. O'Hara

Dated: March ____, 2010

FOR STANDARD PARKING
CORPORATION

_____

8781160v.4

Dated: March _____, 2010

FOR PLAINTIFF JORGE JAIME AND THE CLASS

_____
Matthew J. Matern

Dated: March _____, 2010

JORGE JAIME

_____
Jorge Jaime

Dated: March 8, 2010

FOR PLAINTIFF VICTOR GONZALEZ AND THE CLASS

_____
James Pazos

Dated: March 9, 2010

VICTOR GONZALEZ

_____
Victor Gonzalez

Dated: March _____, 2010

FOR PLAINTIFF LUIS A. AGUIRRE AND THE CLASS

_____
Dennis F. Moss

Dated: March _____, 2010

LUIS A. AGUIRRE

_____
Luis A. Aguirre

Dated: March _____, 2010

FOR DEFENDANT STANDARD PARKING CORPORATION

_____
Lorraine H. O'Hara

Dated: March _____, 2010

FOR STANDARD PARKING CORPORATION

_____

8781160v.4

Dated: March \_\_\_\_\_, 2010

FOR PLAINTIFF JORGE JAIME AND
THE CLASS

_____
Matthew J. Matern

Dated: March \_\_\_\_\_, 2010

JORGE JAIME

_____
Jorge Jaime

Dated: March \_\_\_\_\_, 2010

FOR PLAINTIFF VICTOR GONZALEZ
AND THE CLASS

_____
James Pazos

Dated: March \_\_\_\_\_, 2010

VICTOR GONZALEZ

_____
Victor Gonzalez

Dated: March **9**, 2010

FOR PLAINTIFF LUIS A. AGUIRRE AND
THE CLASS

*/s/ J. Mark Moore*
~~Dennis F. Moss~~
J. MARK MOORE

Dated: March \_\_\_\_\_, 2010

LUIS A. AGUIRRE

_____
Luis A. Aguirre

Dated: March \_\_\_\_\_, 2010

FOR DEFENDANT STANDARD
PARKING CORPORATION

_____
Lorraine H. O'Hara

Dated: March \_\_\_\_\_, 2010

FOR STANDARD PARKING
CORPORATION

_____

Dated: March _____, 2010

FOR PLAINTIFF JORGE JAIME AND
THE CLASS

_____
Matthew J. Matern

Dated: March _____, 2010

JORGE JAIME

_____
Jorge Jaime

Dated: March _____, 2010

FOR PLAINTIFF VICTOR GONZALEZ
AND THE CLASS

_____
James Pazos

Dated: March _____, 2010

VICTOR GONZALEZ

_____
Victor Gonzalez

Dated: March _____, 2010

FOR PLAINTIFF LUIS A. AGUIRRE AND
THE CLASS

_____
Dennis F. Moss

Dated: March 9, 2010

LUIS A. AGUIRRE

_____
Luis A. Aguirre

Dated: March _____, 2010

FOR DEFENDANT STANDARD
PARKING CORPORATION

_____
Lorraine H. O'Hara

Dated: March _____, 2010

FOR STANDARD PARKING
CORPORATION

_____

12

8781160v.4